NUMBER 13-00-683-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                           CORPUS CHRISTI

 



 

MICHAEL GARCIA,                                                   Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 



 

                   On appeal from the 24th District Court

                           of De Witt
County, Texas.

 

 



                              O P I N I O N

 

          Before Chief Justice Valdez and Justices Yañez
and Castillo

                                  Opinion by Justice Castillo

 








Appellant, Michael
Garcia, pled nolo contendere, without a plea bargain, to the offense of
burglary of a habitation,[1]
enhanced with habitual felony offender paragraphs,[2]
to which appellant pled true.  The trial
court sentenced appellant to sixty years in prison.  From this conviction and sentence, Garcia
appeals.  Garcia raises six issues,
complaining that: 1) the trial court improperly denied his request to restrict
the State=s voir dire on
punishment; 2) the trial court erred in denying trial counsel=s request to withdraw
and allow appellant to employ counsel of his own choosing; 3) appellant was
denied a Afair and impartial@ judge, rendering his
conviction void; 4) appellant=s plea was involuntary
because the trial court failed to admonish him about community supervision or
deferred adjudication community supervision; 5) appellant was denied effective
assistance of counsel; and 6) the trial court abused its discretion in
assessing a sentence of sixty years confinement and such sentence amounted to Acruel and unusual
punishment.@  We affirm.

Procedural History and Relevant Facts








Appellant=s case was set for a
jury trial on October 23, 2000.  On that
same morning, but prior to the commencement of the jury trial, appellant filed
a motion to restrict voir dire, asking the trial court to prohibit the State
from questioning the venire panel members on their ability to consider
punishment within the different ranges of punishment for the offense of
burglary of a habitation, that same offense with a repeat felony offender
enhancement, and that same offense with a habitual felony offender enhancement.
The trial court denied the motion.

That day, appellant=s appointed trial
counsel also filed a motion to withdraw as counsel and asked that another
counsel be appointed.  On the hearing on
this motion, appellant did not request that another counsel be appointed, but
asked that the trial court allow him to discharge his appointed counsel or
allow counsel to withdraw so that appellant could hire his own counsel.  The trial court denied the request to
withdraw, announced that the case would proceed to trial that day, but informed
appellant that he could hire his own counsel and that if he did, he should Abring him in@ and that would be Afine.@

The court then heard a
motion in limine and took a recess.








Upon return from the
recess, appellant, still with his appointed counsel, chose to waive his right
to a jury trial, plead nolo contendere without a plea bargain, and have the
court assess punishment.  Appellant signed
a judicial confession indicating that he was pleading nolo contendere, a plea
memorandum (which included an attachment titled, AExhibit A,@ containing
admonishments), and an application for a Aprobated sentence.@[3]  The trial court made inquiries as to
appellant=s understanding of the
rights he was giving up and the voluntariness of his waivers, and after
appellant acknowledged that he understood his rights and was waiving them
voluntarily, the court went over the range of punishment with appellant.  The judge then inquired as to the existence
of a plea bargain, and being informed that there was none, asked appellant
whether he was a citizen of the United States. 
After appellant answered yes to that question, the following exchange
took place.

JUDGE:       I presume this is
not going to involve deferred adjudication or probation?

 

DEFENSE COUNSEL :      Judge, he=s eligible for it.

 

JUDGE:       Okay.

 

The judge then asked
appellant what his plea was, and appellant responded that he was
pleading nolo contendere. 
Appellant also pled true to each of the three enhancement paragraphs and
acknowledged that he was entering his plea of nolo contendere freely,
intelligently, knowingly and voluntarily.








The State offered into
evidence the judicial confession, the plea memorandum, the sheriff=s, Texas Rangers= and Victoria Police
Department=s reports related to
the crime, two videotapes of appellant=s confession to the
Texas Rangers, and two penitentiary packets.[4]   Defense counsel responded, ANo objection@ to the offer of each
of the State=s exhibits and they were
admitted into evidence.  The defense
offered no evidence.  The trial judge
then accepted the plea of nolo contendere, reminded appellant that the
court was not bound to follow any recommendations as to punishment, found
appellant guilty, and set the matter down for a punishment hearing three days
later. 








At the punishment
hearing, the  State called three
witnesses: the victim of the burglary, and two law enforcement agents.  The victim spoke of the crime and its effect
on her family and her, including the fear it induced and the heavy financial
loss suffered.  The first law enforcement
agent, Deputy Carl Bowen of the DeWitt County Sheriff=s Office, testified
about a letter that appellant wrote to a co-defendant in the case in which a
symbol appeared which Bowen believed was a AT@ superimposed on an AS@ and which Bowen
forwarded to a gang intelligence officer. 
Bowen also testified about a photograph of appellant taken at the time
of booking that showed a tattoo of a AT@ with downward-turned Ahorns.@  The State next called Emil Garza, a security
threat group sergeant with the Texas Department of Criminal Justice who
testified that he tracked and monitored individuals in the jail system who
exhibited signs of being involved in gangs. 
He spoke about the Texas Syndicate prison gang; revealed that one of
appellant=s co-defendants was a
confirmed Texas Syndicate gang member but admitted he had no confirmation of
appellant=s membership;
testified that the symbol on the letter written by appellant was consistent
with one of the ways that Texas Syndicate members signed off their letters;
introduced photographs of tattoos of known Texas Syndicate  members, pointing out the Ahorns@ on the AT@s; and opined that
appellant=s tattoo appeared to
resemble the AT@ of a Texas Syndicate
member tattoo, although he admitted it was missing the AS@ that the gang tattoos
contained.  The State also introduced
photographs of the crime scene, inventories of the items taken, the copy of the
letter written by appellant, and photographs of appellant=s tattoo and tattoos
of confirmed Texas Syndicate members.

Appellant=s brother and sister
testified on his behalf that appellant was not a violent person and had been
employed regularly at a variety of jobs since his release from prison.  Appellant=s brother testified that appellant had a drug and
alcohol problem from the time he was very young and the brother felt that
sending appellant to a substance abuse facility would help him.  Appellant=s sister knew appellant had been to drug
rehabilitation centers while on parole but had not seen him actually on
drugs.  She believed a Aprison setting that
treated people for drug or alcohol problems@ would be beneficial for him and believed he
should receive community supervision.








Appellant also took
the stand in his own behalf and testified that he had only been on community
supervision once when he was very young; none of his crimes had involved
violence; he had not been affiliated with a gang while in prison; he had no
gang related tattoos; and that the ATS@ symbol on the letter
he wrote was just a scribble that was Anot a gang-related
thing@ to him.  Appellant stated that he had been employed
more often than not when he was not in prison, including at the time of the
offense.  He testified about his
substance abuse problem, prior treatment and efforts to get more treatment, but
admitted that at the time of the offense, he was still using crack cocaine Aalmost every day,@ as well as
methamphetamine occasionally, and alcohol and marihuana Aall the time,@ although he was on
parole and had previously spent two years in prison on a parole revocation
based partly on his drug use. 








Appellant=s counsel told him
that if the judge found his priors true, then appellant was Alooking at 25 up@ and asked appellant
if he understood, to which appellant responded that he did.  Defense counsel then explained that one of
the options the judge had was deferred adjudication in which he could send
appellant to a Alock-down@ substance abuse
felony treatment facility where appellant could get treatment and then asked
appellant if that would be a viable option for him.   Appellant responded that he had been to two
programs in his life, one for six months and one for seventy-two days and felt
that a longer stay would have helped him. 
Appellant also said he wanted to do something about his problem but
needed professional help.  Appellant
admitted knowing at the time of the crime that if he was caught he was looking
at a Asevere@ sentence.  He also acknowledged that his only probated
sentence had been revoked when he committed another crime.  He also apologized to the victims of the
offense and stated he was willing to accept the consequences for the crime he
committed against them.

In closing arguments,
the State asked the judge to sentence appellant to Anothing less than
sixty years,@ while the defense
asked the judge to consider the full range of options that he had, including
placing appellant on deferred adjudication community supervision with a stay in
a substance felony punishment facility. 
After retiring to consider the sentence, and a recess for lunch, the
trial court found the enhancement paragraphs to be true and assessed punishment
at sixty years in prison.

Request to Limit Voir
Dire

In his first issue,
appellant complains that the trial court erred in overruling his motion to
restrict the State=s questioning on voir
dire.  Appellant filed a pretrial motion
requesting that the trial court limit the State=s voir dire on punishment to a range of 2-99
years or life,[5]
asserting that this would cover the entire possible range of punishment in the
case.  The State responded that it had a
right to question the veniremembers about their ability to consider the range
of punishment under enhancement provisions, so long as the questions were
general and did not specifically reference appellant=s prior convictions. 








We note first that no
voir dire ever took place as appellant chose instead to waive his right to a
jury and have the court determine his guilt and punishment.  Hence, the questions which appellant
complains that the trial court should have restricted were never asked.  Nonetheless, appellant asserts that this Aadverse ruling clearly
prejudiced Appellant=s case to obtain a
fair trial on guilt-innocence@ and implies, but does
not assert, that he decided to waive a jury trial because of this adverse
decision.

We find no evidence in
the record to support such a claim or to demonstrate any harm suffered by
appellant.  Moreover, it is well settled
that a party has the right to question  venire
panel members on the range of punishment related to enhancement paragraphs as
long as it is done generally, as a hypothetical, without informing the jury
about specific allegations in the enhancement paragraphs against a
defendant.  Martinez v. State, 588
S.W.2d 954, 956-57 (Tex. Crim. App. 1979); Bevill v. State, 573 S.W.2d 781,
783 (Tex. Crim. App. 1978); Jack v. State, 867 S.W.2d 942, 944 (Tex.
App.BBeaumont 1993, no
pet.).  Indeed, it is error to deny the
parties the right to do so.  Martinez,
588 S.W.2d at 957.  Accordingly, the
trial court did not err in denying appellant=s request to restrict voir dire.

Appellant=s first issue is
overruled.

Denial of Motion to
Withdraw








In his second issue,
appellant charges that the trial court erred in failing to allow his appointed
trial counsel to withdraw on the day of trial Aand to allow Appellant to employ an attorney.@  Appellant argues that the trial court=s failure to allow his
appointed counsel to withdraw denied him the right to employ his own counsel
and  be represented by counsel of his own
selection, which he asserts violated his due process rights.

The facts in this case
do not support appellant=s contentions.

The record shows that
the motion to withdraw was filed on the day of trial, Monday, October 23,
2000.  At the hearing on this motion,
prior to the scheduled commencement of trial, defense counsel stated that, when
he had met with his client the prior Friday, October 20, 2000, appellant had
indicated that he had not felt his attorney had done enough for him and so
appellant wanted to ask for a new attorney. 
Appellant told the trial judge that he was working on hiring his own
lawyer.  The judge denied the motion to
withdraw but told appellant that, if he wanted to hire his own lawyer and bring
him in during the trial, that was acceptable. 
The judge advised appellant, however, that he  would not Astop the case at this point@ as appellant had had Aplenty of time@[6] to hire his own
attorney.[7]  The record does not reflect that appellant
retained counsel.

We do not find that
the trial court denied appellant the right to be represented by retained counsel
of his own choosing. 








Appellant cites us to
the case of Heard v. Gomez, 321 F.2d 88 (5th Cir. 1963), which is a
two-paragraph per curiam opinion affirming a district court order.  Review of the district court order, Gomez
v. Heard, 218 F. Supp. 228, 229 (S.D. Texas 1962), reveals that the
defendant in that case had retained counsel who was unable to attend Gomez=s scheduled state
trial because he was then engaged in trying another case.  Id. 
Gomez=s counsel filed a
motion for continuance, swearing to such facts. 
Id.  The state trial court
denied the motion for continuance, appointed an attorney for Gomez, and put him
to trial with the appointed attorney.  Id.
 In a writ of habeas corpus from the
state conviction, a federal district court found that the state trial judge, by
denying the continuance and forcing the defendant to proceed to trial with
appointed counsel instead of his already privately retained counsel, denied him
the right to representation by counsel of his own choosing.  Id.  








In the present case,
appellant did not have retained counsel. 
He was not forced to go to trial with his appointed counsel rather than
his retained counsel.  He was never
denied the right to employ his own counsel and so be assisted by counsel of his
own choosing.[8]  Indeed, the trial court explicitly permitted
him to retain his own counsel and told appellant that if he hired counsel to Abring him@ to court but
appellant apparently chose not to do so or was unable to do so.  We do not find that any action of the trial
court denied appellant his right to be represented by retained counsel of his
own choosing.  We overrule appellant=s second issue.                       

Deferred Adjudication
Claims

Appellant raises three
complaints related to the question of deferred adjudication community
supervision.  In his third issue on
appeal, appellant complains that he was 
denied a Afair and impartial@ judge because the
trial judge did not: 1) admonish appellant as to deferred adjudication; and 2)
inform appellant prior to accepting the plea that community supervision was not
a possibility and allow appellant to withdraw his plea if the trial court was
not going to consider community supervision. 
In his fourth issue on appeal, he argues that these failures of the
trial court rendered his plea involuntary. 
In his final issue related to this subject, and fifth issue on appeal,
appellant asserts that he was denied effective assistance of counsel because
his trial counsel did not inform him that Aprobation@ was not a possibility
or instruct him of his right to withdraw his plea.  We will consider these issues in turn.

Denial of a AFair and Impartial@ Judge













Appellant=s first argument under
his third issue is that, because the judge Akn[ew] that appellant
was entering a plea without a plea bargain,@ the judge was required to admonish appellant as
to deferred adjudication.   Appellant
provides no authority for this proposition and we know of no authority that
requires a judge to admonish a defendant about deferred adjudication simply because
he is making an open plea.  Indeed,
generally there is no requirement that a trial court admonish a defendant
regarding community supervision at all.  Harrison
v. State, 688 S.W.2d 497, 499 (Tex. Crim. App. 1985).  Nevertheless, a trial court may impose the
duty upon itself to accurately admonish if it voluntarily offers an
admonishment as to the availability of community supervision.  Ex  Parte Williams, 704 S.W.2d 773, 775
(Tex. Crim. App. 1986).  However,
appellant does not make this argument, or rely on such authority, in his third
issue on appeal.[9]  Rather, he simply argues that because he made
an open plea, the trial court was required to admonish him about deferred
adjudication.         Appellant=s second complaint
about the trial judge B that the trial court
should have advised appellant that Aprobation was not a
possibility@ and Aallow[ed] Appellant to
withdraw his plea if the trial court was not going to consider probation@ B is likewise
completely unsupported by authority.  We
first note that there is nothing in the record to demonstrate that the trial
court did not consider the deferred adjudication community supervision that
appellant requested and which was a legal possibility in appellant=s case.   Additionally, appellant fails to provide
any  authority that states that a trial
judge, in a non-plea bargained case, is required to advise the defendant what
sentence he intends to assess, whether or not he is considering assessing
deferred adjudication or a suspended prison sentence, or whether or not he
intends to assess the sentence that a defendant would prefer.  Likewise, appellant cites no authority that a
trial judge in such a case must allow the defendant to withdraw his plea if the
defendant does not like the sentence to be assessed.  One of the benefits of a plea bargain is the
right to be informed if the trial court does not intend to follow the plea
bargain and to have the chance to withdraw the plea if the court has decided
not to assess the punishment agreed upon by the defendant and the State.  Tex.
Code Crim. Proc. Ann. art. 26.13(a)(2)(Vernon Supp. 2002).  The protections that appellant complains of
not receiving are, by statute, not extended to open pleas.  Id. 
By choosing to enter a plea without a plea bargain, therefore, appellant
willingly entered into a plea without such protections.  Moreover, a defendant is not entitled to
withdraw his plea after the assessment of punishment, although it is within the
court=s discretion to permit
him to do so.[10]  See Dorsey v. State, 55. S.W.3d 227,
234 (Tex. App.BCorpus Christi 2001,
no pet.).  Since appellant was not
entitled to withdraw his plea, the trial court could not have erred in failing
to admonish him about a non-existent right.








More to the point for
the purposes of this Court, appellant=s arguments on appeal
do not square with his listed third issue on appeal or his authorities
cited.  Although complaining that his
conviction is void because he was denied a Afair and impartial@ judge, appellant makes no claims in his
arguments that the judge was unfair or partial and instead complains of
violations of procedures which he argues the judge was required to
perform.  However, the only authority
appellant cites for his third issue relates only to the claim of the denial of
a fair and impartial judge, specifically that: 1) the Texas Constitution
requires a judge to recuse himself whenever he might be interested in a case or
has participated in the investigation of the case;[11]  2) the code of criminal procedure prohibits a
judge from sitting in a case where he may be the party injured;[12]
and 3) due process requires that a trial judge be a neutral and detached
hearing body or officer.[13]  Appellant presents no facts or even arguments
demonstrating that the judge was interested in the case, participated in the
investigation, was the party injured or was not neutral or detached.  In short, appellant=s cited authorities do
not support his contentions and his contentions bear no relevance to his cited
authorities.  Whatever issue appellant
desired this Court to review has been waived.[14]  Tex.
R. App. P. 38.1(h)(brief must contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record). 

Voluntariness of the
Plea








Considering then
appellant=s fourth issue, we
find no evidence supporting appellant=s claim that his plea
was involuntarily made due to the same judicial Aerrors@ that he complains of
under issue three.  Appellant also avers
that the trial judge=s question about
deferred adjudication or probation being Aa part of this plea,@ and the judge=s response of Aokay@ to defense counsel=s  response that appellant was Aeligible for it,@ constituted an
admonishment about community supervision, thus imposing on the trial court the
duty to admonish him that he was not eligible for Aprobation.@ 

Appellant does not
claim on appeal that, but for these alleged errors, he would not have pled
guilty.   He simply argues that these
alleged errors were made and that rendered his plea involuntary.  In the present case, there was no motion for
new trial or other evidentiary hearing on the question of voluntariness.  Claims on appeal of an involuntary plea, without
supporting confirmation in the record, will not be sufficient for a reviewing
court to find a plea involuntary.  Franklin
v. State, 693 S.W.2d 420, 431 (Tex. Crim. App. 1985)(mere assertions in a
brief not supported by evidence in the record will not be considered on
appeal).  We consider the totality of the
circumstances in determining the voluntariness of a plea, viewed in the light
of the entire record.  Ybarra v. State,  960 S.W.2d 742, 745 (Tex. App.BDallas 1997, no
pet.).  Once a defendant has pled guilty
and attested to the voluntary nature of his plea, he bears a heavy burden at a
subsequent hearing to demonstrate a lack of voluntariness. Garcia v. State,
877 S.W.2d 809, 812 (Tex. App.BCorpus Christi, pet.
ref=d).








The record shows no
objection or protest or raising of this issue of voluntariness until the
appellate brief was filed.  The record
before us indicates a voluntary plea. 
Appellant=s representations in
his APlea Memorandum,@ including attached AAdmonishments,@ as well as his
responses to the trial court during the plea, demonstrated that he understood
the charges against him, had consulted with his attorney, was fully satisfied
with his attorney, and was entering his plea freely.  There is nothing in the record to contradict
these statements. 

Additionally, as noted
previously, the first two Afailures@ of which appellant
complains made his plea involuntary B 1) the failure of the
trial judge to admonish him as to deferred adjudication when it was required
because the judge Akn[ew] that  appellant was entering a plea without a plea
bargain;@ and  2) the failure of the judge to inform
appellant prior to accepting the plea that community supervision was not a
possibility and to allow appellant to withdraw his plea if the trial court was
not going to consider community supervision B were not errors. 









As for appellant=s final proposition,
that the trial court erred in not admonishing appellant that, because of his
prior record he was not eligible for community supervision, for which appellant
cites Ramirez v State, 655 S.W.2d 319, 322 (Tex. App.BCorpus Christi 1983,
no pet.) in support, we find the present case distinguishable from Ramirez.  Even appropriating what was actually defense
counsel=s statement and
considering it as an admonishment from the judge, we view the statement as not
actually inaccurate as appellant was, in fact, eligible for deferred
adjudication community supervision. 
Appellant was even eligible for Aregular@ community supervision
until and unless the trial court found the enhancement
paragraphs to be true, which did not occur until the very end of the punishment
hearing, immediately before the pronouncement of sentence.  For this reason, the rationale of Ramirez
v. State, 655 S.W.2d 319, 322 
(Tex. App.BCorpus Christi 1983,
no pet.) does not apply, as the Ramirez court found that the code of
criminal procedure specifically prohibited the trial court from granting
community supervision to the defendant because of the nature of the offense
charged.  In Ramirez, we noted
that one of the direct consequences of that defendant=s plea of guilty to
aggravated robbery was giving up the chance for community supervision.[15]
 Id.  By contrast, appellant=s plea of nolo
contendere to the charge of burglary did not divest him of the chance for
community supervision, as previously noted.

Even assuming the
trial court=s question and Aokay@ response was an
inaccurate admonishment, where an inaccurate admonishment on community
supervision is made, such action will not by itself render a plea
involuntary.  Ex Parte Williams,
704 S.W.2d at 776-77.  Appellant must
show that, because of the inaccurate admonishment,  he was left unaware of the consequences of
his plea.  Id.  There must  also be an objective showing in the record
that a defendant was misled or harmed by the inaccurate admonishment.  Id.








There is nothing in
the record in the instant case to demonstrate that defendant was misled or
harmed, even if the brief exchange of which he complains could be considered an
inaccurate admonishment. The record reflects that there was never any
expectation that appellant might receive Aregular@ community
supervision.  Appellant was well aware,
and testified he understood, that if the judge found the enhancements true, he
was facing twenty-five or more years in prison. 
Appellant=s hopes, and his
attorney=s efforts, centered
around deferred adjudication community supervision, an option which the trial
court had the power to grant, even despite a finding of true as to the
enhancement paragraphs.[16]  The fact that the trial court chose not to
grant appellant his desired deferred adjudication community supervision does
not render appellant=s plea
involuntary.  Tovar-Torres v.
State, 860 S.W.2d 176, 178 (Tex. App.BDallas 1993, no pet.)(
plea is not rendered involuntary simply because a defendant receives a greater
punishment than he anticipated).

          We overrule appellant=s fourth issue.

Ineffective Assistance
of Counsel








In appellant=s fifth issue, he
claims ineffective assistance of counsel, because his attorney did not inform
him that Aprobation@ was not a possibility
or instruct him of his Aright to withdraw his
plea.@  Since appellant pled nolo contendere,
in order to demonstrate ineffective assistance of counsel, appellant must prove
that: (1) the advice given by his attorney was not within the range of
competence demanded of attorneys in criminal cases; and (2) but for the
attorney=s errors, appellant
would, with a reasonable probability, not have pled no contest, but would have
insisted on going to trial.  Ex Parte
Moody, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).  Appellant must overcome the strong
presumption that counsel=s actions fell within Aa wide range of
reasonable representation,@ McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996), and, if the record shows that
appellant asserted at the plea hearing that he understood the consequences of
his plea, a @heavy burden@ is placed on him at a
later hearing to show a lack of voluntariness. 
Solomon v. State, 39 S.W.3d 704, 707 (Tex. App.BCorpus Christi 2001,
no pet.).  AAny allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.@  McFarland, 928 S.W.2d at 500. 

Appellant has not met
his burden.  As noted, there was no
motion for new trial raising such issue and hence no hearing and no testimony
on the claimed ineffectiveness or the voluntariness of the plea.  Indeed, we have no record in the present case
as to what advice the attorney gave or how that affected appellant=s decision to plead guilty.  There is certainly nothing in the record to
prove that appellant would have chosen to go to trial, except for his attorney=s alleged failures.  The record before us is simply not
sufficient for this Court to find any ineffective assistance of counsel.[17]








Moreover,  we find that the complained-of errors of
counsel were not errors at all.  Trial
counsel could not have told appellant prior to the plea that Aprobation was not a
possibility@ and thatAhe was not going to
get probation@ because the trial
court had the power to grant deferred adjudication but simply chose not to do
so.  Contrary to appellant=s assertions in the
brief, the trial court never stated that community supervision was not going to
be considered, though in this case, because of appellant=s history, deferred
adjudication community supervision was the only viable community supervision
option if the trial court found the enhancement paragraphs to be true.  No one but the judge knew whether or not deferred
adjudication would be granted until the judge ruled.  Thus counsel could not have told his client
that no community supervision would be granted as the possibility of deferred
adjudication was clearly an option for the court and was presented and argued
to the court by trial counsel.  

Appellant=s other complaint,
that the attorney should have advised him of his right to withdraw his plea Asince the trial court
clearly stated that probation was not going to be considered by the [c]ourt,@ is similarly not
supported by the record.  The trial judge
never made such a statement, nor did he ever insinuate that he was not
considering appellant=s request for deferred
adjudication community supervision.  All
parties in this case knew exactly what the defendant was requesting and the
record reflects that the trial court treated appellant and his counsel with respect
and courtesy, listening to all of appellant=s evidence and arguments, and retiring for a
recess to take that matter under consideration before deciding appellant=s sentence.  

We overrule appellant=s fifth issue on
appeal.                   

Cruel and Unusual
Punishment








In his final issue on
appeal, appellant claims that the trial court abused its discretion in
assessing a sentence of sixty years imprisonment, arguing that such sentence
violated his right to be free from cruel and unusual punishment under the
Eighth and Fourteenth Amendments of the United States Constitution and Article
I, Section 13 of the Texas Constitution because it was grossly disproportionate
to the seriousness of the offense committed. 

We note first of all
that appellant has cited no authority in support of his state constitutional
claims or explained how that protection differs from that provided by the
federal constitution.  Appellant has
therefore waived his state constitutional claim.   Narvaiz v. State, 840 S.W.2d 415, 432
(Tex. Crim. App. 1992).  In any case,
Texas courts make no distinction between Texas and federal constitutional
provisions of cruel and unusual punishment and so our decision under either
would be the same.  Cantu v. State,
939 S.W.2d 627, 639 (Tex. Crim. App. 1996).








We overrule  this issue.  
Appellant made no objection to his sentence to the trial court, either
at the time of sentencing or in any post-trial motion, on any grounds, nor did
he ever lodge an objection, under constitutional or other grounds, to the
alleged disparity, cruelness, unusualness or excessiveness of the
sentences.  Even constitutional claims
can be waived by failure to object.  Smith v. State, 721 S.W.2d 844, 855 (Tex.
Crim. App. 1986).  To preserve an error
for appellate review, a party must present a timely objection to the trial
court, state the specific grounds for the objection, and obtain a ruling.  Tex. R.
App. P. 33.1(a).  Generally, an appellant may not
complain of an error pertaining to his sentence or punishment if he has failed
to object or otherwise raise error in the trial court.  Mercardo v. State, 718 S.W.2d
291, 296 (Tex. Crim. App. 1986); see also Solis v. State, 945 S.W.2d
300, 301 (Tex. App.B Houston [1st Dist.]
1997, pet. ref=d)(claim of grossly
disproportionate sentence violative of Eighth Amendment waived by failure to
object); Quintana v. State, 777 S.W.2d 474, 479 (Tex. App.BCorpus Christi 1989, pet.
ref=d)(failure to object
to sentence as cruel and unusual waives error). 
In the present case, by failing to object to the trial court=s sentence below,
appellant has waived this issue on appeal.








Moreover, it is
well-established that a sentence that falls within the range of punishment is
not cruel and unusual.  Samuel v.
State, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972).  Appellant=s sentence fell in the mid-range of punishment
for a habitual felony offender.[18]  We recognize that it has been held that a
sentence within the range of punishment may still violate the Eighth Amendment
if it is grossly disproportionate to the offense committed.[19]  Solem v. Helm, 463 U.S. 277, 289
(1983).  However, the viability and mode
of application of proportionate analysis in non-death penalty cases is
currently in question.  See McGruder
v. Puckett, 954 F.2d 313, 315-16 (5th Cir. 1992)(discussing the various
opinions issued in Harmelin v. Michigan, 501 U.S. 957 (1991) and their
impact on the Solem decision).  In
the present case, even if error had been preserved as to this argument, and
assuming arguendo the viability of a proportionality review, sixty years
in prison was not a grossly disproportionate sentence considering the evidence
presented as to the crime and appellant=s prior history and so
no constitutional violation occurred.[20]  

Conclusion

Having found appellant=s third issue waived
and having overruled all of appellant=s remaining issues, we
affirm the judgment of conviction and sentence by the trial court.                                                        

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P. 47.3(b).

 

Opinion delivered and filed

this 22nd day of August, 2002.











[1]
Tex. Pen. Code Ann. '30.02(a)(1)(Vernon
Supp. 2002).





[2]
Tex. Pen. Code Ann. '12.42(d)(Vernon
Supp. 2002).





[3]
Included in the plea memorandum was a statement that the plea was being entered
freely and voluntarily and that appellant was totally satisfied with the
representation provided by his counsel. 
The admonishments included the following information about deferred
adjudication: 

 

6.  In the event adjudication is deferred, and in
the further event a condition of community supervision is violated, the
defendant may be arrested and detained. 
The defendant is entitled to a hearing limited to the determination by
the Court of whether it proceeds with an adjudication of guilt on the original
charge.  No appeal may be taken from this
determination.  After an adjudication of
guilt, all proceedings, including assessment of punishment, pronouncement of
sentence, granting of community supervision, and defendant=s
appeal continue as if the adjudication of guilt had not been deferred.  Upon
adjudication of guilt, the Court may select any punishment authorized for the
offense.  

 

In
the event adjudication is deferred by the Court, the defendant may file a
written motion requesting final adjudication within 30 days after entering
his/her plea and the deferment of adjudication; and, in such event, the judge
shall proceed to final adjudication as in all other cases.

 

 

No
other reference to community supervision, deferred or otherwise, appeared in
the plea memorandum or admonishments. 
The application Afor a Probated
Sentence@ was filed at
the same time as the plea papers and specifically requests the court, not the
jury, to consider the application.  No
application requesting Aprobation@
from the jury was ever filed.

 

 





[4]
Appellant served time in prison for burglary of a habitation, burglary of a
building, and robbery, as well as for parole violations.





[5]
The range of punishment in this case would have been two to twenty years and up
to a $10,000 fine if the jury found the enhancements not to be true, see Tex. Pen. Code Ann. ''30.02(c)(2), 12.33
(Vernon 1994 &  Supp. 2002), five to
ninety-nine years or life and up to a $10,000 fine if the jury found one
enhancement true, Tex. Pen. Code Ann. ''
30.02(c)(2),12.42(b), 12.32 (Vernon 1994 & Supp. 2002) and twenty-five
years to ninety-nine years or life if the jury found both enhancements true, see
Tex. Pen. Code Ann. '12.42(d)(Vernon
Supp. 2002). 





[6]
The case had been pending for approximately nine months.  Appellant was arrested on the indictment on
January 26, 2000.  The trial court
appointed an attorney to represent appellant on February 3, 2000.  On February 24, 2000, the trial court
appointed new counsel.  That counsel
represented appellant for the next eight months until the conclusion of the
case.  Prior to the day of trial, no
motions to withdraw had been filed by this attorney.  No requests by appellant for new counsel to
replace this attorney, or motions to substitute a retained attorney, appear in
the trial court=s record.  Appellant did not file a motion for new trial
presenting evidence as to any retained attorney whose services he had secured
prior to the time of his plea, nor does he complain on appeal about the denial
of the services of any particular attorney.





[7]
Appellant did not make any request for a continuance to hire new counsel nor
does he complain on appeal that the trial court should have granted him a
continuance.  





[8]
Appellant does not claim on appeal that the trial court erred in failing to
grant him new court-appointed counsel; moreover, we have held that a request
for new appointed counsel made on the day of trial is too late.  Degroot v. State, 24 S.W.3d 456, 460
(Tex. App.BCorpus Christi
2000, no pet.).





[9]
Appellant does raise such an argument in reference to the voluntariness of his
plea under his fourth issue and we will consider the matter in our review of
that issue.





[10]
We note that the record does not reflect that appellant ever asked to withdraw
his plea, nor did he file a post-trial motion requesting to do so or a motion
for new trial. 





[11]
Tex. Const. art. V, '11.





[12]
Tex. Code Crim. Proc. Ann. art. 30.01 (Vernon Supp. 2002).





[13]
Earley v. State, 855 S.W.2d 260, 262 (Tex. App.BCorpus
Christi 1993), pet dism=d,
872 S.W.2d 758 (Tex. Crim. App. 1994).





[14]
Nonetheless, our own review of the record, and the law as discussed supra,
finds no factual basis to support a claim that appellant was denied a fair and
impartial judge or legal basis to find that there was any error on the part of
the trial court on the grounds asserted in the arguments made in the third
issue.





[15]
In that case, we only discussed the defendant=s
eligibility for Aregular@
community supervision.  The possibility
of the defendant=s eligibility
for deferred adjudication was not raised before this Court. 





[16]
See Tex. Code Crim. Proc. Ann. art.
42.12, '5(d) (Vernon
Supp. 2002) for the offenses and circumstances which bar the grant of deferred
adjudication.  That section contains no
bar related to a finding of true as to enhancement paragraphs for repeat or
habitual felony offenders.  Tex. Code Crim. Proc. Ann. art. 42.12, '5(d)
(Vernon Supp. 2002).





[17]
As noted by the court of criminal appeals, in the majority of cases, the record
is not sufficiently developed to allow for a review of a complaint of
ineffective assistance of counsel on direct appeal.  Thompson v. State, 9 S.W.3d 808,
813-14 (Tex. Crim. App. 1999). 





[18]
See Tex. Pen. Code.
Ann. '12.42(d)(Vernon Supp.
2002)(range of punishment for a habitual felony offender is imprisonment in the
institutional division for life, or any term not more than  ninety-nine years or less than twenty-five
years).





[19]
Appellant cites Weed v. State, 891 S.W.2d 22 (Tex. App.BFort
Worth 1995, no pet.) as supporting his contention that the proper standard of
review on this issue is that of an abuse of discretion.  However, Weed does not even mention
the Eighth Amendment or Acruel and
unusual punishment,@ and the
standard expressed therein explicitly relates to the proper standard of review
when reviewing a trial court=s
decision to revoke community supervision.  Weed, 891 S.W.2d at 24.  Weed  has no applicability to the issue before
us.  





[20]
The McGruder court, analyzing the Supreme Court=s
splintered action in Harmelin,501 U.S. 957, 965 (1991), concluded that Athis
much is clear: disproportionality survives, Solem does not.@  McGruder v. Pucket, 954 F.2d 313, 316
(5th Cir. 1992).  Solem required
an analysis of three questions: (1) the gravity of the offense and the
harshness of the sentence; (2) the sentences imposed on other criminals in the
same jurisdiction; and (3) the sentences imposed for commission of the same
crime in other jurisdictions.  Solem,
463 U.S. 277, 292 (1983). The McGruder court, drawing on one of the
three opinions issued in Harmelin, refined the Solem analysis
to  explicitly require a threshold
comparison of the harshness of the sentence and the gravity of the offense, and
then only if the court inferred that the sentence is grossly disproportionate
would it consider the remaining two factors enunciated by Solem.  McGruder, 954 F.2d at 316.  This Court has been cautious about applying
the McGruder analysis.  Sullivan v. State, 975 S.W.2d 755, 757 (Tex.
App.BCorpus Christi
1998, no pet.).  We need not consider its
application today because the proportionality issue was not preserved and
because no evidence as to the last two Solem factors was submitted to
the trial court.  Therefore no
comparative analysis can be performed.